**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-21-02605-002-TUC-RM (MAA) |
| Plaintiff, | **ORDER** |
| v. | |
| Alexander Carvail Coleman, | |
| Defendant. | |

On March 20, 2025, Defendant Alexander Coleman filed a pro se Motion to Clarify (Doc. 165), requesting explanation regarding the calculation of his state and federal sentences and time credits. On July 17, 2025, the Court ordered Philip Kimble, the attorney who represented Defendant in the above-captioned criminal proceedings, to confer with Defendant and thereafter file a notice averring that Defendant's questions had been resolved, or in the alternative file a notice outlining any remaining issues concerning the calculation of Defendant's sentence. (Doc. 167.) On August 15, 2025, Mr. Kimble filed a Notice as ordered, in which he explains that he believes: Defendant's Motion to Clarify is not moot; legitimate issues exist regarding Defendant's sentence; and the Court should issue an amended judgment in this case. (Doc. 168.) The Court has reviewed the law and the record and concludes that Defendant's sentence in this matter was properly imposed, and that issuance of an amended judgment is not appropriate. Therefore, the Court will grant Defendant's Motion to Clarify (Doc. 165) insofar as this Order explains the calculation of his state and federal sentences, but will not grant any other relief at this time.

**I.     Background**

The above-captioned criminal matter was initiated on October 6, 2021, when an indictment was filed against Defendant. (Doc. 1.) Defendant was charged with making a false statement in connection with the purchase of a firearm and possession of a firearm by a convicted felon, with the charged conduct taking place between January 22, 2019, and September 25, 2019. (*Id.*) After being arrested pursuant to a federal warrant on October 25, 2021, Defendant was released the next day on his own recognizance. (Doc. 149 at 4.) On April 13, 2023, while this case was still pending, Defendant was arrested on unrelated state charges of possession of a weapon by a prohibited person and discharging a firearm within city limits, with the charged conduct taking place on February 11, 2023. (Doc. 104.) After his arrest on the state charges, Defendant remained detained at the Pima County Adult Detention Center. (Doc. 149 at 4.)

On July 31, 2023, this Court issued a writ of habeas corpus ad prosequendum, ordering that the Defendant be produced for an appearance in this Court for a change of plea hearing. (Doc. 135.) On August 15, 2023, the Defendant was so produced, and pled guilty to the federal charge of possession of a firearm by a convicted felon. (Doc. 139.) The Court ordered that Defendant be detained pending further proceedings, and Defendant remained in federal custody until December 6, 2023, when he was sentenced by this Court to 30 months imprisonment on the federal charge of possession of a firearm by a convicted felon. (Doc. 153.) After the sentencing on December 6, 2023, Defendant was immediately transferred back to the custody of the state to await sentencing on the pending state charges. (Doc. 165 at 1.) On March 1, 2024, the state court sentenced Defendant to 1.5 years imprisonment, and ordered that its sentence run concurrently to the term of imprisonment imposed in this federal criminal case. (Doc. 168-1 at 2.) Defendant began serving the sentence imposed by the state court in state prison immediately thereafter. (Doc. 168-1.)

On July 24, 2024, Defendant completed his state sentence, was released from state prison, and was immediately transferred to federal custody to begin serving the term of imprisonment imposed by this Court. (Doc. 165 at 1.) Defendant avers that, in speaking to

his case manager upon his arrival in federal custody, he discovered that he had only two days credited to his federal sentence, but it had been his belief that the time he had just finished serving in state prison would be credited to his federal sentence. (*Id.*)

In Defendant's counsel's August 15, 2025 Notice to the Court, counsel explains that it is his belief that the Bureau of Prisons ("BOP") erred by not deeming Defendant's federal sentence to have started on December 6, 2023, the date of Defendant's federal sentencing. (Doc. 168 at 3.) Defendant's counsel further argues that it was in error for the BOP to fail to credit the presentence time Defendant spent in federal custody between August 15, 2023 and December 6, 2023 toward his federal sentence. (*Id.* at 4.) Finally, Defendant's counsel suggests that this Court issue an amended judgment in this matter ordering that the sentence imposed in this case be concurrent with Defendant's state term of imprisonment in order to, in counsel's view, more accurately reflect what was "intended by the sentencing judges." (*Id.* at 5.) The Court will address each of these issues in turn.

**II.     Discussion**

    **a.  Start Date of Federal Sentence**

Counsel argues that Defendant's federal sentence should have commenced on December 6, 2023, the date that Defendant was sentenced by this Court. (Doc. 168 at 3.)

"A sentence to a term of imprisonment commences on the date the defendant is received in custody waiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). A defendant is only in "custody" for the purposes of § 3585(a) when the federal government has both physical custody and primary jurisdiction over him. *Johnson v. Gill*, 883 F.3d 756, 761 (9th Cir. 2018). The first sovereign to arrest a defendant has primary jurisdiction. *Thomas v. Brewer*, 923 F.2d 1361, 1365 (9th Cir. 1991). When a defendant is released on his own recognizance, however, the sovereign that executed the arrest cedes primary jurisdiction, and if the defendant is subsequently arrested by another sovereign, it is that sovereign which obtains primary jurisdiction. *Taylor v. Reno*, 164 F.3d 440, 444 (9th Cir. 1998), *abrogated on other grounds by Setser v. United States*, 566 U.S.

231 (2012). In *Taylor*, the court held that the federal government ceded primary jurisdiction over a defendant when it released him on his own recognizance, and the state government obtained primary jurisdiction over him when it subsequently arrested him on other charges. *Id.*

Where a sovereign relinquishes physical custody of a defendant pursuant to a writ of habeas corpus ad prosequendum, it does not cede primary jurisdiction over that individual; he is merely "on loan" to the other government. *Thomas*, 923 F.2d at 1367; *Reynolds v. Thomas*, 603 F.3d 1144, 1152 (9th Cir. 2010). "A 'loan' in this context indicates that the sending sovereign expected the receiving sovereign to return the defendant following that defendant's prosecution . . . The nature of this transfer does not relinquish primary jurisdiction over the defendant, as it merely constitutes a transfer of 'temporary control.'" *Luckenbill v. Peters*, No. CV-23-02462-PHX-SRB (DMF), 2025 WL 863857 (D. Ariz. Jan. 17, 2025), *report and recommendation adopted*, No. CV23-02462-PHX-SRB (DMF), 2025 WL 862141 (D. Ariz. Mar. 19, 2025).

Since both physical custody and primary jurisdiction are required before a defendant's federal sentence can commence, the sentence of one who appears pursuant to a writ of habeas corpus ad prosequendum does not begin to run immediately upon sentencing. *Taylor*, 164 F.3d at 444. In *Taylor*, the court held that a defendant who appeared in federal court for sentencing pursuant to a writ of habeas corpus ad prosequendum was still under the primary jurisdiction of the state, and therefore "the district court did not have authority to order [the defendant] into federal custody to commence his federal sentence." *Id.*

Here, when Defendant was arrested by the federal government on October 25, 2021 under a warrant issued in this criminal matter, the federal government acquired primary jurisdiction over him. When Defendant was released on his own recognizance the following day, however, the federal government ceded primary jurisdiction. When Defendant was arrested and detained by the State on April 13, 2023, the state government gained primary jurisdiction over him, just as in *Taylor v. Reno*. And next, when Defendant

was transferred to the physical custody of the federal government from August 15, 2023, to December 6, 2023, pursuant to a writ of habeas corpus ad prosequendum, the state government retained primary jurisdiction over him, since he was merely "on loan" to the federal government during that time. Further illustrating that the state never ceded primary jurisdiction to the federal government is the fact that Defendant was transferred back to the physical custody of the state immediately after the completion of his federal sentencing.

Therefore, Defendant's counsel's contention that Defendant's federal sentence should have commenced on December 6, 2023, the date of Defendant's federal sentencing, is incorrect; the federal government had physical custody of Defendant, but did not have primary jurisdiction over him on that date. As a result, this Court lacked and continues to lack the authority to order Defendant's federal sentence to have commenced on that date. The Bureau of Prisons' apparent determination that Defendant's federal sentence commenced on July 24, 2024—the day he completed his state sentence and was released from state custody into federal custody—is correct.

### b. Presentence Incarceration Credit

Counsel for Defendant contends that Defendant should be given presentence credit for the time he spent in federal custody between August 15, 2023, and December 6, 2023, when Defendant was "on loan" to the federal government pursuant to a writ of habeas corpus ad prosequendum. (Doc. 168 at 4.) This argument is foreclosed, however, by 18 U.S.C. § 3585(b), which lists the circumstances in which a "defendant shall be given credit . . . for any time he has spent in official detention prior to the date [a] sentence commences," and specifically states that a defendant may only be given credit for time "that has not been credited against another sentence." "[W]hen it enacted § 3585(b) . . . Congress made clear that a defendant could not receive a double credit for his detention time." *United States v. Wilson*, 503 U.S. 329, 337 (1992); *see also Kenny v. Sanders*, 713 F. Supp. 2d 989, 991 (C.D. Cal. 2010) ("Since petitioner received credit against his state sentence for the time he spent in custody prior to [release on parole], he is not entitled to credit against his federal sentence for the same period of time.").

Here, the state court ordered that Defendant be given credit of 324 days toward his state sentence on the conviction of possession of a weapon by a prohibited person. (Doc. 168-1 at 2.) This appears to reflect the entire time Defendant spent in custody between his arrest by the state on April 13, 2023, and his state sentencing on March 1, 2024, encompassing the period between August 15, 2023, and December 6, 2023, when Defendant was in the physical custody of the federal government. Since that period of presentence incarceration was credited toward Defendant's state sentence, § 3585(b) prohibits it from also being credited toward Defendant's federal sentence.

### c. State Court Pronouncement of Concurrent Sentence

Counsel for Defendant further argues that the state court's order that the sentence it imposed on March 1, 2024, be concurrent to Defendant's previously imposed federal sentence means that the federal sentence should be modified to conform to this decision. (*Id.*)

Under federal statute "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C.A. § 3584(a). Where a federal court imposes a sentence that is silent with respect to whether it should run concurrently with any future state sentence, the statutory default requires that the federal sentence be treated as consecutive to the state sentence, which was necessarily imposed at a different time. *See Setser*, 566 U.S. at 238 n.3; *Aragon v. Ricolcol*, No. CV 24-0247 GW (AS), 2025 WL 602177 (C.D. Cal. Jan. 23, 2025) (collecting cases), *report and recommendation adopted*, No. CV 24-00247-GW(AS), 2025 WL 833073 (C.D. Cal. Mar. 12, 2025), *aff'd*, No. 25-2676, 2025 WL 2985903 (9th Cir. Oct. 17, 2025).

Additionally, the U.S. Sentencing Guidelines state that "[i]f . . . a state term of imprisonment is anticipated to result from another offense that is *relevant conduct* to the instant offense of conviction . . . the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment." U.S.S.G. § 5G1.3(c) (emphasis added). But a concurrent sentence is not appropriate pursuant to U.S.S.G. § 5G1.3(c) when

the conduct giving rise to the respective state and federal offenses is unrelated. *See United States v. Chandler*, No. 210CR00482GMNPAL1, 2023 WL 1110565 at *5 (D. Nev. Jan. 30, 2023).

Here, since the federal sentence imposed by this Court was silent with respect to whether it would run concurrently with any future state sentence (Doc. 156), the statutory default under § 3584(a) requires that Defendant's federal sentence be treated as consecutive to his state sentence. And in addition, U.S.S.G. § 5G1.3(c) did not support imposing a federal sentence concurrent to Defendant's anticipated state sentence, because the offense for which Defendant was charged by the state was not "relevant conduct" to his federal offense. The indictment that initiated this criminal case arose out of conduct taking place between January 22, 2019, and September 25, 2019 (Doc. 1) whereas the conduct for which Defendant was charged by the state took place years later, on February 11, 2023 (Doc. 104). Although both were firearms-based offenses, there is no evidence suggesting that the crimes were part of any unified course of conduct. Indeed, the Presentence Report issued in this case specifies that Defendant's April 13, 2023 arrest was on "*unrelated* state charges." (Doc. 149) (emphasis added).)

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Clarify (Doc. 165) is **granted**, insofar as this Order explains the calculation of Defendant's state and federal sentences.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS FURTHER ORDERED** that within **thirty (30)** days of the date this Order is filed, CJA Attorney Philip Kimble shall—

1. Transmit to Defendant Alexander Carvail Coleman a copy of this Order; and
2. File a Notice confirming that Defendant Alexander Carvail Coleman has been transmitted a copy of this Order.

Dated this 14th day of November, 2025.

_____
Honorable Rosemary Márquez
United States District Judge